# UNITED STATES

## v.

# IGLESIAS ET AL.

San Juan, Equity, No. 1043.

INJUNCTION AGAINST RAILROAD STRIKERS.

Injunction—Enforcement of Federal Law.

1. The government's resort to the courts to enforce its own laws is not only justifiable, but a valuable precedent.

United States v. Iglesias.

Labor and Capital—Judiciary.

> 2. The Federal court acts in a dispute between labor and capital where there is an infringement of a Federal right of life, liberty, or property.

Opinion filed December 30, 1919.

---

*Mr. Miles M. Martin,* United States District Attorney, for the Governmentt.

*Mr. H. G. Molina* for defendants.

HAMILTON, Judge, delivered the following opinion:

This cause was argued December 24 on plaintiff's motion for preliminary injunction and defendants' motion to dismiss. The defendants introduced evidence tending to show that the strike was due to improper actions of the railroad company, and argued as a matter of law that the United States had no proprietary interest in the sugar or responsibility for its production, as it had in the matter of coal and the railroads in the Hayes Case at Indianapolis.

The court asked counsel for the government for light upon the subject whether it would be consistent with the government's view of the case to amend or otherwise bring the railroad company in as a party defendant, so that the court could hear both sides of the strike matter, which was so earnestly pressed by the defendants, and thus perhaps be enabled to do complete justice, intimating that the facts might develop that this was a case where justice should not be done by halves.

United States v. Iglesias.

No briefs have been filed, or amendment made, but now on December 30 the district attorney comes and files a memorandum stating that the Attorney General of Porto Rico and the Federal district attorney had prepared a bill in behalf of the people of Porto Rico, looking to a receivership of the American Railroad Company, which would accomplish the purpose the court had in mind; but that the strikers and the railroad company have meanwhile agreed upon arbitration and the said railroad is regularly operating and performing the duties of a common carrier.

Plaintiff's attorney asks leave to dismiss its bill, the restraining order necessarily going with the bill.

1. Under the circumstances there can be no decision of the question asked by the court as to making the railroad a party. There being no strike, it is not necessary to determine who should be parties to the proceeding. The other question, however, as to whether the United States can bring a suit against strikers where the production or distribution of a food product is involved, should not be left undetermined, as the case was submitted upon that point, and it may be of importance in the future if not in this particular litigation.

The Lever Act in question approved August 10, 1917, amended October 22, 1919, makes it a penal offense to interfere with the production or distribution of food products. Sugar is in this class. It is idle to say that the United States, with their vast Navy and Army still large, even without counting many officials and employees, are not interested even on the property side of the question. But the question is even broader. As Judge Anderson said in the Hayes Case at Indianapolis: "This case involves solely the question of enforcing the law. It is my

absolute duty to uphold the law, which no one man and no body of men has the right to override. Were we to admit to even the slightest degree a contrary right, we would undermine the foundations of the Republic. The government is right in seeking to uphold its own laws and in asking its court to aid it. These men have done an illegal act from which irreparable injury results to the complainant." This case has not been appealed, and its principles are adopted so far as applicable to the case at bar. The government's resort to the courts to enforce its own laws is not only justifiable, but a valuable precedent. It is easier, more efficacious, and without the objections inherent in the forcible measures which have in the past been applied in unlawful strikes. The rule that an injunction does not lie to prevent a crime does not apply to a class of cases where the crime is not one committed upon an individual, but upon the United States and all its citizens.

2. This must not be taken as a condemnation of the right to work or the right to strike. This court has in this case nothing to do with the controversy between the railroad company and its employees, or, as it is usually expressed, the controversy between capital and labor. There must be some way found of adjusting these, or the body politic will be paralyzed, but this adjustment has not been by law committed to the courts except so far as some infringement of a constitutional or Federal right of life, liberty, or property is concerned. When any of these are violated, and there is some established procedure either to prevent, restore, or punish, the duty of the court is clear, and there would be no hesitation on the part of the judiciary. This is true whether the rights violated be those of employers or employees; for there is no respect of persons in the courts. The

case at bar, however, is not of this character. It is of an even higher nature, being brought under an act passed under the war power to meet special emergencies as to public policy in a case where the emergency has arisen.

It seems proper to determine this point of the jurisdiction of the court before granting the motion of the government to dismiss the case.

The motion of defendants to dismiss is denied. That of the plaintiff is granted. It is so ordered.